UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-3-RJC-DCK

| | |
|---|---|
| GLENDALE LLC d/b/a WESTERN SIZZLIN, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>AMCO INSURANCE COMPANY d/b/a )<br>NATIONWIDE MUTUAL INSURANCE )<br>COMPANY, )<br>        Defendant. )<br>) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff Glendale LLC d/b/a Western Sizzlin's ("Plaintiff") Motion for Partial Summary Judgment, (Doc. No. 11), and Defendant Amco Insurance Company d/b/a Nationwide Mutual Insurance Company's ("Defendant") Motion for Partial Summary Judgment, (Doc. No. 15).

**I.  BACKGROUND**

Since 1994, Plaintiff has owned and operated a Western Sizzlin restaurant in Gastonia, North Carolina. (Doc. No. 13-2: Allen Sisler ("Sisler") Dep. at 6). On September 29, 2008, the restaurant suffered a fire that damaged the building and its contents. (Doc. Nos. 1-3 at 4; 2 at 2). Defendant insured the restaurant under Nationwide Premier Businessowner Policy # ACP 2212352296 ("Policy"). (Doc. Nos. 1-3 at 3; 2 at 2).

On or about October 1, 2008, a meeting was held at the site to inspect damage caused by the fire. (Doc. No. 13-2: Sisler Dep. at 11). Allen Sisler, an officer of Plaintiff, Mike Austin, Defendant's adjuster, and several contractors were present. (Id.). The parties then solicited bids to repair the damage. (Id.). Beam Construction submitted a bid for $215,238. (Id. at 16). C.H. & Sons submitted a bid for $507,570. (Id.). Belfor submitted a bid for $507,204. (Id. at 17).

Sidbury Group submitted a bid for $506,111. (Doc. No. 1-3: Complaint at 6). Pinnix Construction submitted a bid for $516,000. (Doc. No. 13-2 at 17).

Beam acknowledged that the work it quoted was significantly less involved than that proposed by the other contractors and would not result in a structure sound enough to secure a Certificate of Occupancy or allow the restaurant to re-open for business. (Doc. No. 11-1 at 2). Defendant claims, however, that the Beam's proposed work would return the restaurant to its pre-fire state, suggesting that the restaurant was in rather poor condition before the fire struck. (Doc. Nos. 16; 11-6: Defendant's letter to Plaintiff).

In March 2009, Plaintiff invoked the Policy's appraisal clause. The clause states:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser after receiving a written request from the other, and will advise the other party of the name of such appraiser within 20 days. The two appraisers will select an umpire. If appraisers cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.   Pay its chosen appraiser; and
>
> b.   Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. No. 11-3: Policy Excerpt). Pursuant to this clause, Plaintiff named Jim Stewart ("Stewart") as its appraiser. (Doc. No. 13-7). After some initial delay, Defendant named Harrison Jones ("Jones") as its appraiser. (Id.). Stewart and Jones selected Paul Woody ("Woody") as the umpire. (Id.).

Stewart, Plaintiff's appraiser, wrote Woody, the umpire, a letter on April 13, 2010, valuing building loss at $520,911.58, the contents replacement cost at $304,607.30 and the actual

2

value contents loss at $190,562.74. (Doc. No. 13-8). Jones, Defendant's appraiser, wrote Woody a letter on June 15, 2010, valuing the reasonable cost of building repairs at $187,281.64, the contents damage at $19,512.40, and $14,838.94 for perishable food items lost in the fire. (Doc. No. 11-5). The parties do not contest the $14,838.94 for food losses. (Id.).

Jones also told Woody that the "appraisal process is intended to fix the amount of loss under the policy for items that are included and covered within the policy." (Doc. No. 11-5: Jones Letter at 1). Jones wrote that "items which would be excluded as part of the insurance contract should not be included within this appraisal process/award or, at the very least, be identified separately." (Id.). Jones advised Woody that they "should not include other needed maintenance or repair of non-related conditions." (Id.). Jones further wrote that they "should consider what caused the respective conditions," and that "if the damages are preexisting . . . or if they are caused by poor maintenance . . . then they should not be included in our appraisal award for the insurance claim for the fire event of September 29, 2008." (Id. at 2). Jones explained that "not only would this be unfair, but it would also be incorrect because the contract (insurance policy) between the two parties (insurance company and insured) excludes pre-existing conditions or repairs not needed due to the covered cause of loss. In this appraisal the cause of loss is the fire event of September 29, 2008." (Id.).

As to any repair to the restaurant's roof, Jones wrote that Plaintiff "has an obligation to protect the property from future damages. In this case, the roof has had minimal temporary localized protection but yet still allowing ongoing damage not directly related to the fire event. Basically the building has been left to sit and deteriorate." (Id. at 3). Woody agreed that some amount of damage was caused by Plaintiff's post-fire neglect rather than the fire and excluded such repairs from his award. (Doc. No. 13-14: Woody Dep. at 14, 25).

3

As to the valuation of the lost building contents, Jones informed Woody of a post-fire break-in which resulted in some of the contents being stolen. (Id. at 4). Jones wrote that "[t]his theft has had no bearing on the value of the fire damage for these items in my opinion," interpreting the Policy to exclude coverage for losses from such a post-fire theft. (Id.). Stewart does not appear to have reached such an issue because he had already deemed those items total losses from the fire. (Doc. No. 18-4). Woody did not testify as to how he treated these items. (Doc. No. 13-14: Woody Dep.).

Woody signed an award appraising Plaintiff's losses on August 26, 2010. (Doc. No. 11-4). Jones signed the award five days later, on August 31, 2010. (Id.). The award separately listed a replacement cost and an actual cash value for repairs to the building, contents/equipment, and perishables. (Id.). Woody and Jones found that the building's replacement cost of repairs was $286,745 and the actual cash value of building repairs was $252,897. (Id.). They found the replacement cost of the contents was $49,350, while the actual cash value of repairs to the contents was $27,494. (Id.). They appraised the loss to perishables at $14,839. (Id.).

Plaintiff alleges that Defendant never sent it any payment under the award. (Doc. No. 1-3 at 7). Defendant explains that this is because it is unsure of whom it should send the proceeds. (Doc. No. 17 at 3). Plaintiff brought suit against Defendant on November 29, 2010. (Doc. No. 1-3 at 11). Plaintiff moved for partial summary judgment on March 1, 2012, asking the Court to declare the appraisal award invalid. (Doc. No. 11). Plaintiff asserts a breach of contract claim, alleging that the Defendant failed to pay a reasonable claims settlement in violation of the Policy. (Doc. No. 1-3). Defendant filed a cross motion for summary judgment on March 13, 2012, asking the Court to enter summary judgment in its favor on Plaintiff's breach of contract claim. (Doc. No. 15).

4

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court's task is no different where cross motions for summary judgment are filed. "The role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'" Subterranean Constr. Co., Inc. v. W.D. Curran & Assocs., Inc., No. 04-3861, 2005 WL 2065231, at *2 (quoting Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985)). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" Id. (quoting Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983)).

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of

allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

Plaintiff argues that the appraisal award is invalid and should not be dispositive as to the loss determination for damage to its restaurant building, contents, or perishable goods. (Doc. No. 11-1 at 4). Plaintiff argues that the award should be declared invalid because it: (1) does not comply with North Carolina General Statutes Sections 58-44-15 & 58-44-16; (2) does not comply with the Policy; and (3) improperly includes issues of coverage and causation.

Defendant argues that the award should be declared valid and binding as to the valuation of building, contents, and perishable losses. (Doc. No. 16 at 9). Defendant asks the Court to confirm the award because the contractual appraisal provisions were followed and there is no evidence of fraud, duress, or other impeaching circumstances. (Id. at 9-20). Plaintiff argues that there is a genuine issue of material fact on the fraud, duress, or impeaching circumstances issue. (Doc. No. 11-1 at 12).

The Court finds that the award's valuation of building damage is invalid due to the appraisers' improper consideration of causation issues. Genuine issues of material fact prevent

6

summary judgment in either party's favor as to the award's appraisal of the restaurant's contents. The parties agree as to the loss valuation regarding perishable goods and, therefore, the agreed amount of $14,839 is binding. Therefore, Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 11), is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion for Partial Summary Judgment, (Doc. No. 15), is **DENIED**.

In a case with an appraisal clause identical to the parties' agreement set out above, the Fourth Circuit held that parties are not bound by the appraiser's determinations of coverage issues. High Country Arts and Crafts Guild v. Hartford Fire Ins., 126 F.3d 629, 634 (4th Cir. 1997). The North Carolina Supreme Court has also observed that "[a]s a general rule, the sole purpose of an appraisal is to determine the amount of damage . . . An Appraisal does not necessarily determine total amount due under the policy. . . Generally . . . whether the loss . . . was caused by a covered risk is a question for the jury. Similarly, whether . . . the loss falls within a policy definition is a question of fact." N.C. Farm Bureau Mut. Ins. Co., Inc. v. Sadler, 711 S.E.2d 114, 117-18 (N.C. 2011) (quoting 15 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 210:42 (Dec. 1999)). The appraisal clause in Sadler explicitly barred the appraisers from interpreting the insurance policy or considering causation or coverage issues, but even without this explicit language the appraisers' consideration of any issue beyond the amount of loss is improper. High Country, 126 F.3d at 634. North Carolina law does not empower appraisers to make causation or coverage determinations. Id.; Sadler, 711 S.E.2d at 117-18; see also Markham v. Nationwide Mut. Fire Ins. Co., 481 S.E.2d 349, 355 (N.C. Ct. App. 1997) (holding that is for the jury to determine causation and coverage questions); Wood v. Mich. Millers Mut. Fire Ins. Co., 96 S.E.2d 28, 29 (N.C. 1957) (holding that determining which of three possible causes for certain damage was a job for the jury).

7

The Sadler court rejected an appraisal award where the appraisers purported to separate loss amounts caused by wind (covered under the insurance policy) from those caused by mold (subject to a coverage limit). 711 S.E.2d at 117. The court held that "the finder of fact must 'determine whether the ultimate cause of the claimed damages falls within the scope of the policy's exclusionary provisions, as defined by the trial court.'" Id. at 118 (quoting Markham v. Nationwide Mut. Fire Ins. Co., 481 S.E.2d 349, 355 (N.C. Ct. App. 1997)).

In High Country, the appraisers interpreted the insurance policy to only allow coverage for the first sixty days of lost business income and valued the business income loss at $26,518. The Fourth Circuit found that the policy covered twelve months of business income loss and held that the parties were not bound by the appraisers' coverage determination. 126 F.3d at 634. Nonetheless, the circuit held that the parties could be bound by the appraisers' finding that the business income loss for the first sixty days was $26,518. Id. Thus, this circuit employs a blue pencil approach to overreaching appraisal awards. Parties are not bound by an appraiser's coverage or causation determinations, but any valid loss valuation within the same award is binding. Id.

Plaintiff argues that the award should be thrown out in its entirety because evidence suggests that the appraisers excluded pre-existing conditions. (Doc. No. 11-1 at 11). This argument takes the bar on causation and coverage determinations too far. Appraisers are tasked with evaluating the "amount of loss." (Doc. No. 11-3: Policy Excerpt). This language authorizes the appraisers to assign a value to the damage done by a given event. One cannot measure a loss without determining a starting point. Thus, the appraisers appropriately excluded conditions that they determined were present before the fire. What is not appropriate for an appraiser to decide is how much of the deterioration resulted from a covered cause and how

8

much came from an uncovered cause.  See Sadler, 711 S.E.2d at 117.

Defendant concedes that the appraisers are not entrusted with the task of causation determination.  (Doc. No. 16 at 14).  But Defendant argues that there is no causation question in this case, stating that "[i]t can be said decisively that the subject fire caused the losses that are the subject of Glendale's claim."  (Id.).  Defendant's appraisers, however, disagree with its decisive statement.

Jones and Woody testified that they excluded repairs for some amount damage to the restaurant based on their belief that some damage was caused by Plaintiff's neglect of the charred restaurant rather than directly by the fire and that the Policy excluded such damages.  (Doc. Nos. 11-5: Jones Letter at 3; Doc. No. 13-14: Woody Dep. at 14, 25).  Like the wind versus mold determination in Sadler, these judgments reflect causation and coverage decisions that should not be part of the appraisal process.  Because the appraisers did not separate their estimated roof repair costs from repairs to other parts of the building, the Court cannot save any part of their building repair appraisal.  Neither party has shown whether damages caused by owner neglect following a fire would be covered under the Policy.  But even assuming they are not, the appraisers were not the proper parties to determine which damage was caused directly by the fire and which damage resulted instead from Plaintiff's alleged post-fire neglect.  That is a jury question.  Sadler, 711 S.E.2d at 118.  Thus, this portion of the award is non-binding as a matter of law.

As to the valuation of the lost building contents, Jones told Woody that he did not believe the Policy covered losses from any post-fire theft.  (Doc. No. 11-5: Jones Letter at 4).  Woody did not testify as to how he treated these items.  (Doc. No. 13-14: Woody Dep.).  Jones's testimony, however, is enough to create an issue of fact over whether the award excluded losses

from this theft. Such an exclusion would reflect an impermissible determination that the Policy did not cover such losses and, possibly, an impermissible causation analysis that the fire did not lead to the theft. Neither party has shown whether the Policy would cover such losses or detailed the events surrounding this theft. If the fire made the restaurant vulnerable to theft such losses might be compensable under the Policy.[1] Thus, the Court cannot conclude as a matter of law that the appraisers' improper policy and causation analysis was harmless. Likewise, the Court cannot conclude as a matter of law that this portion of the award excluded losses that should have been covered. Issues of fact remain over whether the award excluded theft losses, whether such losses are covered under the Policy, and if they are, what is the loss amount.

The perishables loss amount should never have been submitted to the umpire. The appraisal agreement provides that "[t]he appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding." (Doc. No. 11-3: Policy Excerpt). Plaintiff's and Defendant's appraisers agreed that the amount of perishable food loss was $14,838.94. (Doc. Nos. 18 at 5; 18-13). Thus, their agreed amount was binding before Woody even became involved.

Next, the Court must address Plaintiff's arguments that the award is invalid because it (1) does not comply with North Carolina General Statutes Sections 58-44-15 & 58-44-16 and (2) does not comply with the Policy. If Plaintiff is entitled to summary judgment on these grounds, the above issues of fact would be immaterial.

Plaintiff argues that the award is invalid because it does not comply with North Carolina

---

[1] The Court expresses no opinion as to whether such losses could be compensable under the Policy because neither party has presented the Policy in full.

General Statutes Sections 58-44-15 and 58-44-16. (Doc. No. 11-1 at 5). These sections incorporate an appraisal clause into every North Carolina insurance contract. N.C. GEN. STAT. §§ 58-44-15 & 58-44-16; see also Boyd v. Ins. Co., 96 S.E.2d 703, 707 (N.C. 1957). The wording of the parties' appraisal clause varies slightly from Section 58-44-16(f)(14). While the parties' contract provides:

> The appraisers will state separately the value of property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

North Carolina General Statutes Section 58-44-16(f)(14) provides:

> The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit only their differences to the umpire. An award in writing, so itemized, of any two when filed with this insurer shall determine the amount of actual cash value and loss.

Highlighting two portions of Section 58-44-16's language, Plaintiff argues that the appraisers' award failed to sufficiently "itemize" "each item." (Doc. No. 11-1 at 6). Plaintiff acknowledges that Woody and Jones's award separately listed the replacement cost of repairs and the actual cash value of repairs to the building, its contents, and perishable goods. (Id.). But Plaintiff argues this was not sufficient itemization. (Id.). Plaintiff concedes that the appraisers did not have to separately set out "each fork, knife, table, or cooking appliance damaged in the fire." (Doc. No. 18 at 3). Instead, Plaintiff argues that the law required Woody's final award to match the level of specificity used in Stewart's submissions to the panel. (Id.). Plaintiff has not supported his argument that Stewart's example is the "just right" level of itemization with any case law. Nor has Plaintiff shown the Court any case where a court has thrown out an award for insufficient itemization. This argument is **DENIED**.

Plaintiff also argues that the award does not comply with the Policy because it does not

11

"state separately the value of property and the amount of loss." (Doc. No. 11-1 at 7). Plaintiff is correct that the award does not place a value on the unrepaired property. (Doc. No. 11-4). Instead, it lists two different types of repair valuations for losses to the building, its contents, and the perishable goods. (Id.). However, Plaintiff's argument assumes that the Court must invalidate the whole award because of the appraisers' omissions of a separate valuation of the present property condition. But under High Country, any valid portion of an appraisal binds the parties, even if some other part of the award is missing or improper. 126 F.3d at 634. Therefore, this argument is also **DENIED**.

The Court does not reach Defendant's arguments regarding the general sufficiency of the award because it has already found that the building appraisal was invalid and genuine issues of material fact remain over whether the appraisers improperly injected causation and coverage issues into the contents valuation. Likewise, the Court does not reach the validity of Plaintiff's fraud, bias, duress, and impeaching circumstances defenses to the enforceability of the award.

## IV. CONCLUSION

The award's valuation of building damage is invalid due to the appraisers' improper consideration of causation issues. Genuine issues of material fact prevent summary judgment in either party's favor as to the award's appraisal of the restaurant's contents. The parties agree as to the loss valuation regarding perishable goods and, therefore, the agreed amount of $14,839 is binding. Therefore, Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 11), is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion for Partial Summary Judgment, (Doc. No. 15), is **DENIED**.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 11), is **GRANTED**

**IN PART AND DENIED IN PART**; and

2. Defendant's Motion for Partial Summary Judgment, (Doc. No. 15), is **DENIED**.

Signed: April 23, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

13

Case 3:11-cv-00003-RJC -DCK   Document 20   Filed 04/23/12   Page 13 of 13